Argued and submitted June 20, affirmed as modified December 21, 1983, reconsideration denied February 10, petition for review denied February 28, 1984 (296 Or 536)

## In the Matter of the Marriage of

### REILING,
*Appellant - Cross-Respondent,*

*and*

### REILING,
*Respondent - Cross-Appellant.*

(15-80-07904; CA A25833)

673 P2d 1360

Larry O. Gildea, P.C., Eugene, argued the cause for appellant - cross-respondent. With him on the briefs was James B. Ehrlich, Eugene.

James W. Walton, Corvallis, argued the cause for respondent - cross-appellant. With him on the brief was Ringo, Walton & Eves, P.C., Corvallis.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Wife appeals and husband cross-appeals from a dissolution decree. Wife assigns as errors the trial court's failure to include a value for good will of her husband's law practice in valuing his professional corporation, the amount and duration of spousal support, the award of more than one-half of the marital assets to husband, the duration of payment of a money judgment in her favor, the procedure followed to determine attorney fees and the failure to include her attorney's fees in the marital indebtedness.

On his cross-appeal husband assigns as errors that the trial judge over-valued his minority interest in Al-Ore, Inc., a closely held corporation, included accounts receivable and work in progress in valuing his professional corporation and did not discount those items for income taxes. Husband does not contest the award of custody to wife of the two children, ages 16 and 9, the award of $400 per month per child for child support or the award of spousal support of $800 a month for five years and $300 for an additional three years.

Wife and husband were married for 15 years. She is 42. He is 46. She has not been employed outside the home since 1961. She received a master's degree in Home Economics Education from Oregon State University in 1967. She hopes to receive a PhD in Family Resource Management to be qualified to teach at the university level before 1986. Husband has practiced law for 19 years and has incorporated his sole practice. He is also an Albany municipal judge. The court awarded wife assets totaling approximately $127,000, consisting of the family residence worth $127,000 (subject to an encumbrance of $35,000, which she must pay), its furnishings and other personal property worth approximately $12,500, a car worth $4,500 and an $18,000 judgment against husband. Husband received the interest in his law office building, his minority stock interest in Al-Ore, Inc., his interest in his professional corporation, his retirement plan, the cash value of his life insurance and furnishings in his possession, for a total value of approximately $186,000. His responsibility for paying $28,000 in marital debts, the judgment in favor of wife and her attorney fees of $5,000 reduce the award to approximately $135,000.

Wife argues that the trial court failed to consider the good will of husband's law practice in valuing his professional corporation. The court stated:

"* * * [W]ith respect to the valuation of the professional corporation, the court has declined to consider good will as an asset of the professional corporation. The court has likewise not included either accounts receivable or work in progress in its valuation of husband's law practice given the fact that the issue of future income is considered by the court in its award of support."

After wife's motion to reconsider,[1] the court placed a value on the accounts receivable and work in progress but did not discuss further the matter of good will. Wife contends that husband's law practice has a good will value of $57,966, but husband argues that the good will is nonexistent or speculative.

Oregon cases have included good will of a professional practice in valuing a spouse's interest. *See Steinbrenner and Steinbrenner,* 60 Or App 106, 652 P2d 845 (1982) (medical); *Maurer v. Maurer,* 49 Or App 355, 619 P2d 964 (1980) (veterinary); *Goger v. Goger,* 27 Or App 729, 557 P2d 46 (1976) (dental). No Oregon case, however, has considered whether good will should be included in valuing a law practice and, in particular, that of a sole practitioner. Husband contends that good will should not be included.[2]

Courts in other jurisdictions have included good will in valuing law practices. In *Stern v. Stern,* 66 NJ 340, 331 A2d 257 (1975), the court stated that good will in a law practice should be included in determining the worth of a professional corporation for dissolution purposes:

"* * * [I]t may * * * in a given case, be possible to prove that [good will] does exist and is a real element of economic worth. Concededly, determining its value presents difficulties." 331 A2d at 261, n 5.

In *Lopez v. Lopez,* 38 Cal App3d 93, 113 Cal Rptr 58 (1974), the court also recognized that "professional good will" in a law partnership should be considered in a marital dissolution:

---

[1] *See Schmidling v. Dove,* 65 Or App 1, 670 P2d 166 (1983).

[2] *See* Oregon State Bar, Code of Professional Responsibility, Canon 4, DR 2-108.

"The fact that 'professional goodwill' may be elusive, intangible, difficult to evaluate and will ordinarily require special disposition is not reason to ignore its existence in a proper case." 38 Cal App 3d at 108.

The court recognized the need for caution:

"While 'market value' and the value for marital dissolution purposes of 'professional goodwill' may be synonymous, in our view such value should be determined with *considerable care and caution,* since it is a unique situation in which the continuing practitioner is *judicially forced to buy an intangible asset at a judicially determined value and compelled to pay a former spouse her share in tangible assets."* 38 Cal App 3d at 110. (Emphasis in original.)

It listed factors for determining good will, including:

"* * * the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgment, skill, knowledge, his comparative professional success, and the nature and duration of his business as a sole practitioner or as a member of partnership or professional corporation to which his professional efforts have made a proprietary contribution. * * *" 38 Cal App 3d at 109.

Here, the trial court may have believed that good will should not be considered in the property division, that husband's law practice had no good will or that the evidence of value was speculative. Wife's expert witness determined his value for good will by taking the median income of lawyers in Linn County with more than 20 years' experience, subtracting 25 percent from that to account for the salary husband receives as a judge, taking an average of the excess of husband's earnings above the median income for the past three years and multiplying that by 4.5. Husband's expert witness testified that, because law practices are not sold in the state and because clients are attracted by the quality of the attorney, good will of a sole practitioner's law practice is speculative.

We find that the evidence that wife presented does not adequately consider the factors of health, professional reputation, skill, knowledge, work habits and the nature and duration of husband's law practice. Assuming that the value of good will could be considered in a dissolution proceeding in valuing a sole practitioner's law practice, we do not find that

the testimony of wife's expert provides a basis on which to assign a value to good will. We do not, accordingly, include any value for good will.

■ Wife asserts that the trial court should have increased and made permanent the award of spousal support. We do not agree. The trial court considered the duration of the marriage, the parties' ages, health, work experience and earning capacities, their financial conditions and her need for career retraining. ORS 107.105(1)(c). The court's award gives wife an opportunity to obtain her credentials for university teaching and is adequate to enable her to maintain a comparable standard of living.

Wife contends that the court awarded husband the "long half" of the marital assets. On her motion to reconsider, the trial court increased the value assigned to the professional corporation by including $21,000 for accounts receivable and $5,000 work in progress. The court then increased her judgment from $12,000 to $18,000. If a value for good will is not included in valuing the professional corporation, wife argues that the judgment should have been increased to $24,410 to give her exactly half of the marital assets.

Although the court desired an equal division of marital assets, nonetheless it declined to award to wife one-half of the increase in marital assets resulting from inclusion of the accounts receivable and work in process. The trial court was concerned about husband's need to maintain a law practice, to pay spousal and child support payments, to pay $28,000 of marital debts, to provide himself with shelter and to pay a substantial judgment to wife. In the light of our ruling, however, explained below, that the value of husband's minority stock interest should be discounted, which reduces the judgment husband must pay, wife should receive an equal share of the marital assets. Although wife receives a smaller judgment because of the discount of husband's minority stock, the new judgment gives her one-half of the marital assets.

■ Wife also argued that husband should pay the $18,000 judgment immediately. The court ruled that he should pay the judgment over a six-year period with interest. Although we modify the decree to reduce the amount of the judgment, we find that husband should still pay the judgment over a six-year period with interest.

■  Wife assigns as error the failure of the trial court to hold a hearing to determine attorney fees. At trial, wife's attorney stated:

> "Mr. Walton and I have agreed that if attorney's fees are awarded, it will be appropriate to have them submitted by affidavit with either side to have the right to ask for a hearing at which sworn testimony would be presented. It's my understanding the court would agree with that, if you decide that attorney's fees are appropriate."

Although both sides submitted affidavits, wife did not request a hearing on the fees. The trial court, therefore, did not err in failing to hold a hearing, and its award of $5,000 in attorney fees to wife was proper.

■  Finally, wife asserts that the court failed to include in marital debts $2,097 that she borrowed from her family to help pay her attorney fees for this proceeding. The court was aware of that obligation and awarded wife $5,000 attorney fees. Accordingly, we find the court's disposition appropriate.

■  In his cross-appeal, husband assigns as errors the court's refusal to value his stock in Al-Ore, Inc., on the basis of a fair market valuation of the company's assets of $780,000 before liabilities and to discount his stock interest because he is a minority stockholder. The court valued husband's stock at $78,679, based on a $983,000 fair market valuation of company assets. This valuation is supported by expert testimony in the record. We agree with the court as to the value of company assets but, as noted below, hold that the court should have discounted the $78,679 figure, because husband holds a minority interest.

■  The buy/sell agreement of the stockholders, to which husband was a party, specifies:

> "[W]ithin 30 days following the end of each fiscal year, the Corporation and its stockholders shall agree upon the value of each share of stock and such value shall be endorsed on this agreement and made a record of (sic) the Corporation minutes."

There is no evidence in the record that the stockholders agreed on the value of the shares of stock or made such an endorsement. At the 1980 annual meeting the stockholders adopted a resolution reading:

"It was moved * * * that option number one setting the fair market value of Al-Ore. Inc at $780,000 be exercised and to effectuate a corporation dissolution using the $780,000 as the value of the corporation, less outstanding obligations, as soon as possible."

The evidence discloses that the purpose of the resolution was to value the corporation "to effectuate a corporation dissolution" and not to agree upon the value of each share of stock for the buy/sell agreement.

The court apparently considered the stockholders' resolution at the annual meeting as the equivalent of the endorsement of the stockholders under the buy/sell agreement. It then ruled that "it is not bound by the valuation agreement entered into by the shareholders." In *Phillipakis v. Phillipakis,* 14 Or App 377, 513 P2d 529 (1973), the trial court did not value a restaurant based on the buy-sell agreement between the stockholders. This court concluded:

"Taking the evidence as a whole, we cannot say that the trial judge was wrong in arriving at his conclusion. He saw and heard the witnesses, and apparently he believed Mr. Phillipakis's testimony as to the value of the restaurant business." *Phillipakis v. Phillipakis,* 14 Or App at 380.

We are not bound by the stockholders' action, whether or not that action was undertaken under the buy-sell agreement.

Husband, however, asserts that the court should have allowed a 25% discount in the value of his stock interest because he is a 12 1/2% minority stockholder. In *Belt and Belt,* 65 Or App 606, 672 P2d 1205 (1983), we held, on the basis of expert testimony in the record, that the husband's minority (9%) stock interest in a closely held family corporation had a "substantial effect on the amount a stranger would be willing to pay" and discounted the husband's stock interest by 50%. Here husband's expert testified that "minority interests in closely held corporations are generally at the so-to-speak mercy of the other stockholders because it's discounted. And generally that discount may range from 20 to 30%." There was no testimony to the contrary. We will discount husband's minority stock interest by 25%, reducing the value from $78,679 to $59,010.

We find that accounts receivable of $21,000 and work in progress of $5,000 were properly included in valuing the law

firm. *See Stern v. Stern, supra.* Finally, we do not agree with husband's argument that in valuing the law practice the trial court should have reduced the value of accounts receivable and work in progress by the amount of increased income taxes which he would pay on account of these items. *See Stern v. Stern, supra.* Any such reduction in value would be speculative. *See Clapperton and Clapperton,* 58 Or App 577, 581, 649 P2d 620 (1982).

The dissolution decree is modified, accordingly, to reduce the judgment in favor of wife to $12,181.[3] Affirmed as modified. No costs to either party.

---

[3] WIFE

| | |
|---|---|
| House | |
| ($127,000 - $35,000 encumbrance) | $ 92,000 |
| Furnishings and personal property | 12,500 |
| Car | 4,500 |
| TOTAL | $109,000 |

HUSBAND

| | |
|---|---|
| Stock interest | $ 59,010 |
| Professional corporation | 39,613 |
| Law office building | 28,304 |
| Retirement | 34,858 |
| Cash value of life insurance | 3,078 |
| Furnishings and personal property | 1,500 |
| TOTAL | $166,363 |
| Less marital debts | -28,000 |
| Less attorney fees | - 5,000 |
| | $133,363 |

| | |
|---|---|
| Husband's Assets | $133,363 |
| Wife's Assets | 109,000 |
| Difference in Division | 24,363 |
| 1/2 of Difference | $ 12,181 |